IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM FASANO, | § | |
| | § | |
| Appellant Below, | § | No. 481, 2025 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| DELAWARE DEPARTMENT OF | § | C.A. No. N25A-04-002 |
| NATURAL RESOURCES AND | § | |
| ENVIRONMENTAL CONTROL, | § | |
| | § | |
| Appellee Below, | § | |
| Appellee. | § | |

Submitted: May 6, 2026
Decided: June 29, 2026

Before **SEITZ**, Chief Justice; **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Kate Butler, Esquire, KATE BUTLER LAW LLC, Wilmington, Delaware, *for William Fasano, Appellant Below/Appellant.*

Devera Breeding Scott, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for the Delaware Department of Natural Resources and Environmental Control, Appellee Below/Appellee.*

Jennifer Singh, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Delaware Merit Employee Relations Board.*

**SEITZ**, Chief Justice:

William Fasano appeals from a Superior Court judgment affirming a Merit Employee Relations Board ("MERB") decision upholding his termination as a state parks superintendent. Among other issues raised on appeal, Fasano contends that the Superior Court erred by denying his procedural due process claim. He argues that the same Department of Justice attorney representing his state agency employer at his first MERB hearing should not have represented MERB in a second hearing following remand. The change in representation, he claims, resulted in an unfair hearing. We agree with Fasano and reverse and remand for a new hearing.

## I.

### A.

According to the record, Fasano was a superintendent for the Bellevue and Fox Point state parks. On a day off, Fasano drove a state car from his state park residence to several locations in New Castle County. A GPS tracking device flagged the car for speeding, triggering a Department of Natural Resources and Environmental Control ("DNREC") investigation. When confronted with the speeding violation, Fasano blamed another employee. He also denied misusing the state car for personal errands.

DNREC confronted Fasano with proof that he drove the speeding car. At that point, Fasano admitted that he was the driver. He explained that he suffered from

2

post-traumatic stress disorder, had a dissociative episode on the day in question, and could not recall what occurred that day.

## B.

For the infractions, DNREC recommended a three-day suspension without pay pending "[a]dditional disciplinary action . . . [upon] further review of [his] conduct and actions in [the] matter."[1] According to DNREC, the suspension was not a termination, but an opportunity for DNREC "to figure out the full ramifications of [the] investigation."[2] Fasano requested a pre-decision meeting regarding this suspension.[3]

Prior to Fasano's pre-decision meeting, DNREC informed Fasano that he was being recommended for termination. DNREC relied on other instances of supposed misconduct to justify the increased sanction. According to DNREC, further investigation revealed (1) misuse of a fleet car to visit Goodwill three separate times; (2) disabling a GPS on the fleet car from September 13, 2020 through January 7,

---

[1] App. to Appellant's Opening Br. at A246 [hereinafter A___].

[2] A146.

[3] Fasano was subject to the state merit rules. Under the rules, "[p]rior to finalizing a dismissal, suspension, fine or demotion action, the employee shall be notified in writing that such action is being proposed and provided the reasons for the proposed action." State Merit Rule 12.3. Under Rule 12.4, "[e]mployees shall receive written notice of their entitlement to a pre-decision meeting in dismissal, demotion for just cause, fines and suspension cases." The "[p]re-decision meetings shall be informal meetings to provide employees an opportunity to respond to the proposed action, and offer any reasons why the proposed penalty may not be justified or is too severe." State Merit Rule 12.6.

2021; and (3) misusing a state computer for a "Video Trading hobby."[4] These incidents, DNREC found, coupled with Fasano's untruthfulness when confronted with the speeding violation, resulted in "a complete loss of confidence and trust in [his] ability to exercise good judgment" in a role that requires "a high degree of candor, truthfulness, and integrity . . . ."[5] DNREC recommended that Fasano be terminated immediately.

Fasano responded that termination was too severe a sanction. He explained that the Goodwill trips were for work purposes to donate lost-and-found items and to purchase used books to fill the free library on park grounds. He also claimed that he did not know how to manipulate the GPS tracking device on fleet cars and did not operate a business from his DNREC office.

On March 31, 2021, DNREC held a pre-decision meeting. After reviewing a prepared statement from Fasano and other information, the state parks director upheld the recommended termination. The DNREC Secretary agreed and informed Fasano that his employment was terminated effective immediately.

---

[4] A251. The GPS disabling and state computer misuse charges were never proven. DNREC conceded that there was no evidence supporting DNREC's charge that Fasano disabled the GPS device. Oral Argument at 25:50.

[5] A251–52.

C.

After his termination, Fasano filed a "dual appeal" under State Merit Rule 12.9 with the Delaware Division of Human Resources ("DHR") and MERB.[6] DHR denied his appeal as untimely.[7] For the MERB appeal, a Department of Justice attorney – the same attorney who would later represent MERB after remand – filed a motion to dismiss the appeal for lack of jurisdiction because it was untimely.[8] MERB denied the motion without prejudice but scheduled a merits hearing and allowed the parties to submit additional evidence about timeliness.[9]

At the MERB merits hearing ("First Hearing"), DNREC renewed its motion to dismiss the appeal as untimely. A different Department of Justice attorney presented the motion on DNREC's behalf. A month later, MERB found the appeal untimely. Fasano appealed MERB's dismissal to the Superior Court. The court found that Fasano's appeal was timely and remanded to MERB for a new hearing.[10]

---

[6] Under State Merit Rule 12.9, "[e]mployees who have been dismissed, demoted or suspended may file an appeal directly with the DHR Secretary or the MERB within 30 days of such action. Alternatively, such employees may simultaneously file directly with the DHR Secretary, who must hear the appeal within 30 days. If the employee is not satisfied with the outcome at the DHR Secretary's level, then the appeal shall continue at the MERB."

[7] A56.

[8] App. to MERB's Answering Br. at B2 [hereinafter B___]; A186, A232–37.

[9] B21–29.

[10] *Fasano v. Del. Dep't of Nat. Res. & Env't Control*, 2024 WL 469638, at *3 (Del. Super. Feb. 2, 2024).

5

D.

After remand, MERB held another hearing ("Second Hearing"). At the Second Hearing, the Department of Justice attorney who filed the motion to dismiss before the First Hearing represented MERB.[11] MERB voted that day to deny the appeal and, after a delay, issued a written decision upholding the DNREC Secretary's decision to terminate Fasano. The Department of Justice attorney who now represented MERB drafted the decision.[12]

MERB found that Fasano violated state policies and was untruthful when confronted with misusing his state car.[13] MERB also concluded that Fasano was afforded due process because DNREC provided him a pre-decision meeting, a notice of the termination, and a reasoned decision.[14] Finally, after weighing mitigating and aggravating factors, MERB concluded that termination was an appropriate penalty.[15] Although it considered Fasano's satisfactory performance reviews and mental health

---

[11] A186, A220, A232.

[12] A47.

[13] A220–31. State Merit Rule 12.1 states: "Employees shall be held accountable for their conduct. Disciplinary measures up to and including dismissal shall be taken only for just cause. 'Just cause' means that management has sufficient reasons for imposing accountability. Just cause requires: showing that the employee has committed the charged offense; offering specified due process rights specified in this chapter; and imposing a penalty appropriate to the circumstances." A228.

[14] A230–31.

[15] *Id.*

issues, MERB found that those mitigating factors did not outweigh his misconduct, which fell below the professional standards required of a state park superintendent.[16]

## E.

On appeal, the Superior Court found that MERB's decision was supported by substantial evidence and free of legal error.[17]  First, it rejected Fasano's claim that MERB erred by considering his untruthfulness.  The court observed that the termination notice expressly included dishonesty as a reason for termination. Second, the court found that MERB's decision was supported by substantial evidence because it considered Fasano's violations of fleet services policy and operating procedures, and his dishonesty about the January 16, 2021 incident.  And finally, the court rejected his claims regarding industrial double jeopardy, conflict of interest, the timeliness of MERB's decision, the chairperson's bias, and due process rights.

Specific to Fasano's due process conflicted-representation argument, the court decided that the Delaware Supreme Court's decision in *Blinder, Robinson & Co. v. Bruton* controlled the outcome.  In *Blinder*, this Court held that, in administrative enforcement proceedings, mixing prosecutorial and adjudicative roles does not

---

[16] A231.

[17] *Fasano v. Del. Dep't of Nat. Res. & Env't Control*, 2025 WL 3049041, at \*4–5 (Del. Super. Oct. 31, 2025).

violate due process unless the aggrieved party makes a specific showing of bias.[18] According to the Superior Court, nothing in the record showed bias towards Fasano. The court upheld MERB's conclusion that DNREC had just cause under State Merit Rule 12.1, and that the termination was an appropriate sanction under the circumstances.

## II.

Because the attorney conflict issue is dispositive, we focus on that issue. Like his argument before the Superior Court, Fasano contends on appeal that the State violated his due process rights when the same Department of Justice attorney representing DNREC during the MERB appeal represented MERB in the same case and drafted its decision. He argues that once an attorney participates as an advocate, even if the matter is procedural, that attorney cannot later represent the decisionmaker in the same case. In other words, "personal commingling of advocacy and adjudication created an intolerable appearance of partiality."[19]

When the Superior Court and this Court review a MERB decision, and the Superior Court did not receive new evidence, this Court directly reviews the MERB

---

[18] *Blinder, Robinson & Co. v. Bruton*, 552 A.2d 466, 473 (Del. 1989).

[19] Opening Br. at 3.

8

decision.[20]  We decide whether it "is supported by substantial evidence and is free from legal error."[21]  We review legal errors *de novo*.[22]

III.

The Fourteenth Amendment to the United States Constitution provides that a state cannot "deprive any person of life, liberty, or property, without due process of law."[23]  Article I Section 9 of the Delaware Constitution states that "every citizen" has a remedy "by due course of law, and justice administered according to the very right of the cause and the law of the land."  It is settled that the right to due process has substantially the same meaning in both constitutions.[24]

Due process comes in two forms – substantive and procedural due process. As we explained in *Burroughs v. State*, "[s]ubstantive due process prevents the government from 'engaging in conduct that 'shocks the conscience,' or interferes

---

[20] *Stoltz Mgmt. Co. v. Consumer Affs. Bd.*, 616 A.2d 1205, 1208 (Del. 1992).

[21] *Blue Beach Bungalows DE, LLC v. State*, 351 A.3d 1007, 1022 (Del. 2025) (quoting *Keep Our Wells Clean v. Del. Dep't of Nat. Res. & Env't Control*, 243 A.3d 441, 446 (Del. 2020)).

[22] *Brigade Leveraged Cap. Structures Fund Ltd. v. Stillwater Mining Co.*, 240 A.3d 3, 9 (Del. 2020).

[23] DNREC argues that Fasano waived his constitutional argument by not raising it at his MERB hearing.  The Superior Court addressed the argument in its decision.  Fasano can raise it on appeal. *In re Tesla, Inc. Deriv. Litig.*, 351 A.3d 1005, 2025 WL 3689114, at *9–10 (Del. Dec. 19, 2025) (TABLE).

[24] *In re Carolyn S.S.*, 498 A.2d 1095, 1097 n.3 (Del. 1984); *see* RANDY J. HOLLAND, THE DELAWARE STATE CONSTITUTION 78 (2d ed. 2017).

9

with rights 'implicit in the concept of ordered liberty.'"[25] Procedural due process, on the other hand, focuses on the way government action is carried out.[26] In employment disciplinary proceedings, public employees have a property interest in continued employment protected by procedural due process.[27]

What process is due is "flexible and calls for such procedural protections as the particular situation demands."[28] Criminal cases require "strict separation" between investigative, prosecutorial, and adjudicatory roles, meaning a prosecutor's office can never simultaneously represent the State in its prosecuting function and advise the court when deciding a defendant's guilt.[29] By contrast, in administrative

---

[25] 304 A.3d 530, 546 (Del. 2023) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

[26] *Id.* at 547 (procedural due process requires any government action depriving a person of life, liberty, or property to be implemented fairly).

[27] *Stanford v. State Merit Emp. Rels. Bd.*, 44 A.3d 923, 2012 WL 1549811, at *4 (Del. 2012) (TABLE) ("We agree that Stanford had a 'property interest' (derived from the 'for cause' standard imposed by state law) in her state employment that merited constitutional protection."); *Naples v. New Castle Cnty.*, 2015 WL 1478206, at *5–6 (Del. Super. Mar. 30, 2015), *aff'd*, 127 A.3d 399 (Del. 2015) (an employee "has a property interest in his employment that is afforded procedural due process").

[28] *Cohen v. State ex. rel. Stewart*, 89 A.3d 65, 86 (Del. 2014) (quoting *Slawik v. State*, 480 A.2d 636, 645 (Del. 1984)).

[29] 16D C.J.S. Constitutional Law § 2021 (2015); *see Uhrich & Brown Ltd. P'ship v. Middle Republican Nat. Res. Dist.*, 998 N.W.2d 41, 51 (Neb. 2023) (criminal trials, unlike administrative proceedings, require strict separation of investigative, prosecutorial, and adjudicative functions); *Heyne v. Metro. Nashville Bd. of Pub. Educ.*, 380 S.W.3d 715, 735 (Tenn. 2012) (the "separation of investigative, prosecutorial, and adjudicative functions is a hallmark of criminal proceedings"); *Layton Sch. of Art & Design v. Wis. Emp. Rels. Comm'n*, 262 N.W.2d 218, 238 (Wis. 1978) ("[A]ll the constitutional protections required in criminal proceedings need not be granted in this administrative proceeding to assure reliability of fact finding or fairness."); *Cochrane's of Champaign, Inc. v. State Liquor Control Comm'n,* 673 N.E.2d 1176, 1179 (Ill. App. Ct. 1996)

10

hearings, procedural due process requirements must balance the practical needs of government in carrying out administrative adjudicative functions with an employee's right to a fair hearing.[30]

In *Blinder*, we recognized that, in administrative settings, "the commingling of roles is often implicit in the practical functioning of administrative agencies which perform both investigative and fact finding functions."[31] Relying on U.S. Supreme Court precedent, we repeated its observation that "the growth, variety, and complexity of the administrative processes have made any one solution [to the problem of what process is due], highly unlikely."[32] Thus, when considering conflicts in administrative proceedings arising from combined investigative and adjudicative functions, the plaintiff must "overcome a presumption of honesty and integrity in those serving as adjudicators."[33] It is only when "such a risk of actual

---

("[A]dministrative proceedings are not criminal prosecutions and are not subject to the same safeguards and protections afforded in the latter.").

[30] *See Blinder*, 552 A.2d at 472–73 (a "mixing of functions" is necessary for the practical functioning of the modern administrative state, and conflict concerns are "ameliorated by judicial review which affords careful scrutiny of administrative agencies' evidential findings and 'reasoning'"); *see also* 16D C.J.S. Constitutional Law § 2021 (2015).

[31] 552 A.2d at 472.

[32] *Id.* at 473 (quoting *Withrow v. Larkin*, 421 U.S. 35, 51 (1975)).

[33] *Id.* (quoting *Withrow*, 421 U.S. at 47) (emphasis removed).

bias or prejudgment [exists] that the practice must be forbidden if the guarantee of due process is to be adequately implemented."[34]

This Court in *Blinder* held that "[t]he mere prosecution of a case by one Deputy Attorney General before another Deputy Attorney General, acting in an adjudicative capacity, is not sufficient to overcome the strong presumption [in U.S. Supreme Court precedent], in the absence of specific evidence of bias."[35] Consistent with that principle, in lawyer disciplinary proceedings, we concluded that "the commingling of investigative and judicial functions at the administrative or fact finding level does not violate due process."[36] The Superior Court has likewise held, in professional licensing proceedings, that commingling functions within an agency is not a *per se* due process violation.[37]

*Blinder*, however, did not address the conflict concerns raised in this appeal. As stated above, in *Blinder*, one Department of Justice attorney represented the

---

[34] *Id.* (quoting *Withrow*, 421 U.S. at 47).

[35] *Id.*

[36] *Id* (citing *In re Kennedy*, 472 A.2d 1317, 1327–29 (Del. 1984)).

[37] *Sokoloff v. Bd. of Med. Prac.*, 2010 WL 5550692, at *7–8 (Del. Super. Aug. 25, 2010) (due process was afforded when two different Deputy Attorneys General independently participated in the same administrative hearing, one prosecuting the case by presenting evidence and the other advising the agency in its adjudicative capacity); *Brown v. State Bd. of Dental Exam'rs*, 1994 WL 315304, at *3 (Del. Super. May 23, 1994), *appeal dismissed and remanded*, 650 A.2d 1307 (Del. 1994) (commingling functions within a single agency, standing alone, does not "abridge the right to procedural due process," even when the appeals tribunal reviewing examination results included the same members who graded the plaintiff's examination).

Securities Commissioner's office, while another acted as the adjudicator.  Here, by contrast, the Department of Justice attorney represented DNREC, moved to dismiss the case, and then switched to represent the adjudicator in the same proceeding.  Not only that, but the same attorney authored the adjudicator's decision, which was likely to be appealed.  In these circumstances, the risk of bias is unacceptably high and does not comport with procedural due process.

We are not alone in finding a procedural due process violation under these circumstances.  For instance, in *Uhrich & Brown Ltd. Partnership v. Middle Republican Natural Resources District*, the Supreme Court of Nebraska addressed whether an administrative hearing violated due process when the natural resources district's attorneys were involved in the decision-making process after exercising investigative and prosecutorial roles.[38]  The Nebraska court, like this Court, started from a presumption that administrative adjudicators act honestly and with integrity and are qualified, unbiased and unprejudiced.[39]  But, the court held, "[t]he 'realistic appraisal of psychological tendencies and human weakness' is different when the

---

[38] 998 N.W.2d at 47–48.

[39] *Id.* at 51.

'same person on the same case' participates in adjudicatory functions after acting in a prosecutorial role."[40]

In this situation, the adjudicatory function is, the court found, "inherently suspect."[41] It took into account that it is "'difficult for anyone who has worked long and hard to prove a proposition . . . to make the kind of dramatic change in psychological perspective necessary to assess that proposition objectively[.]'"[42] Thus, the court held that when an attorney acts as both advocate and then an advisor to the decisionmaker in the same case, the presumption of impartiality of a tribunal no longer holds and the proceeding violates procedural due process.[43]

DNREC and MERB downplay the Department of Justice's attorney's role in the MERB appeal. They point out that the attorney had no further involvement representing DNREC after filing the motion to dismiss. They argue that, under

---

[40] *Id.* at 53 (quoting *Withrow*, 421 U.S. at 47, and Robert R. Kuehn, *Addressing Bias in Administrative Environmental Decisions*, 37 J. Nat'l. Ass'n. Admin. L. Judiciary 693, 748 (2018)).

[41] *Id.*

[42] *Id.* at 54 (quoting *Botsko v. Davenport Civ. Rts. Comm'n*, 774 N.W.2d 841, 849 (Iowa 2009)).

[43] *Id.* at 49, 56; *see Botsko*, 774 N.W.2d at 853 (an attorney who advocated for the complainant and then participated in the decisionmaker's closed adjudicatory proceedings created the appearance of fundamental unfairness in violation of due process); *Sabey v. City of Pomona*, 155 Cal. Rptr. 3d 452, 458 (Cal. Ct. App. 2013) ("Agencies are barred from using a partner in a law firm as an advocate in a contested matter and another partner from the same law firm as an advisor to the decision maker in the same matter."); *see also In re Grismore*, 329 A.3d 199, 207 (Vt. 2024) (due process was not violated where a prosecuting attorney who advised the decisionmaker on separate matters maintained conduct consistent with her distinct role in each).

*Blinder*, we should accept this mix of investigative, prosecutorial, and adjudicative functions.

The circumstances here, however, are a bridge too far. The Department of Justice attorney staked out a position adverse to Fasano. The attorney then shifted from a prosecutorial-type role to the adjudicator's legal advisor in the same case and wrote the adjudicator's decision. Under these circumstances, the risk of actual bias is unacceptably high and therefore violates an employee's procedural due process right to a fair and impartial hearing.

## IV.

The judgment of the Superior Court is reversed, and the case remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.